**SMITH KRIVOSHEY, PC**
Joel D. Smith (New Jersey Bar No. 457602024)
Aleksandr "Sasha" Litvinov (*pro hac vice* forthcoming)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Telephone: 617-377-7404
joel@skclassactions.com
sasha@skclassactions.com

**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (*pro hac vice* forthcoming)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7000
yeremey@skclassactions.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN DIVISION**

| | |
|---|---|
| KALMAN ROSENFELD, on behalf of himself and others similarly situated,<br>25 Seaton Road<br>Toms River, NJ 08755,<br><br>Plaintiff,<br><br>And<br><br>FELICIA NOVICK, on behalf of herself and others similarly situated,<br>6633 Woodman Ave.<br>Apt. 7<br>Van Nuys, CA 91401,<br><br>Plaintiff,<br><br>v.<br><br>UNILEVER UNITED SATES, INC., a Delaware and New Jersey corporation,<br>800 Sylvan Ave.<br>Englewood Cliffs, NJ 07632,<br><br>Defendant. | CASE NO. ____________________<br><br>**COMPLAINT -- CLASS ACTION**<br><br>**DECLARATORY AND PERMANENT INJUNCTIVE RELIEF REQUESTED**<br><br>**DEMAND FOR A JURY TRIAL** |

## NATURE OF ACTION

1. This class action aims to hold Defendant Unilever United States, Inc. responsible for failing to truthfully and accurately label and market its Dove brand Sensitive Skin Body Wash (the "Product").

2. Allergic contact dermatitis is the fifth most prevalent skin disease in the U.S., exceeding $1.5 billion in direct annual medical costs. Between 1996 and 2016, the prevalence of dermatitis caused by personal care products increased by almost 300%. As much as 70% of the U.S. population is allergic to at least one personal care product ingredient.

3. It is extremely difficult for people to identify what ingredient they are allergic to. Allergic reactions are attenuated in both space and time. Some allergic reactions will not manifest until a week after exposure to the allergen. Instead, the immune system can sometimes "remember" the first exposure and the allergic reaction will develop later on the body part that was first exposed to the allergen.

4. As a result, consumers with sensitive skin and skin conditions increasingly seek out and rely on terms like "hypoallergenic" when making purchasing decisions about skin care and hygiene products. Those who do not suffer from skin allergies seek hypoallergenic products to avoid developing a skin allergy. Those who do suffer from a skin allergy seek hypoallergenic products to avoid the inflammatory cascade caused by an unidentified skin allergen.

5. Since its founding, Defendant touts Dove as being a credible and trustworthy brand in the skin care and hygiene industry. Seeking to capture the growing hypoallergenic market, Defendant prominently labels its Dove Sensitive Skin Body Wash as "hypoallergenic":


Dove
new
nouveau
DERMATOLOGIST #1 RECOMMENDED
sensitive
skin
hypoallergenic
hypoallergénique
24hr Renewing MicroMoisture
body wash | nettoyant corporel
24Hr Renouvellement MicroMoisture
30.6 U.S. FL OZ | 905 mL


sensitive
skin
hypoallergenic
hypoallergénique

6. This representation is false and misleading, however. Despite Defendant's marketing scheme, the Product is full of known skin sensitizers (*i.e.*, allergens) and is itself a skin sensitizer according to the scientific and regulatory definition of a skin sensitizer.

7. The Product contains skin sensitizers in an amount that can reasonably be expected to induce an allergic response in a significant number of its intended users (*i.e.*, individuals with sensitive skin).

8. As a result of the Product's ingredients, the Product is also just as likely and, for some products, *more* likely to cause an allergic reaction in its intended users than similar, competing products which do not claim to be hypoallergenic. And, the Product is far more likely to cause an allergic reaction in its intended users than similar, competing products which are, in fact, hypoallergenic.

9. By deceiving consumers about the nature, quality, and/or ingredients of its Product, Defendant is able to take away market share from competing products and increase its own sales and profits. Consumers lack the ability to test or independently ascertain the potential for allergic contact dermatitis at the point of sale. Reasonable consumers must and do rely on Defendant and its competitors to honestly report the nature of their products and ingredients.

10. Plaintiffs bring this action individually and on behalf of similarly situated consumers who purchased the Product that was falsely and misleadingly labeled and marketed as "hypoallergenic" and for "sensitive skin." Plaintiffs seek to represent a putative nationwide class, California, New Jersey, and New York subclasses, and multi-state classes seeking damages, interest thereon, reasonable attorney fees and costs, restitution, equitable relief, and disgorgement of all benefits Defendant has enjoyed from its unlawful and deceptive business practices, as detailed herein. In addition, Plaintiffs seek injunctive relief to stop Defendant's unlawful conduct

in the labeling and marketing of the Product. Plaintiffs make these allegations based on their personal knowledge as to themselves and their own acts and observations and, otherwise, on information and belief based on investigation of counsel.

**PARTIES**

11. Plaintiff Kalman Rosenfeld is domiciled in New Jersey since summer 2022. Prior to summer 2022, Plaintiff Rosenfeld was domiciled in New York. For approximately four years, from 2020 through 2024, Plaintiff Rosenfeld occasionally purchased the Product from CVS and Duane Reade in Brooklyn, New York and CVS and Walmart in Toms River, New Jersey. Plaintiff Rosenfeld estimates he purchased the Product at least four or five times, with the earliest purchase in or around early 2020 and the most recent purchase in January 2025.

12. In deciding to make these purchases, Plaintiff Rosenfeld saw, relied upon, and reasonably believed the label representation that the Product was "hypoallergenic" and designed for "sensitive skin." These representations were a significant reason for his purchases.

13. Plaintiff Rosenfeld and his son have sensitive skin and have in the past suffered skin irritation, dermatitis, and, in the case of his son, severe atopic eczema.

14. In the case of common skin irritation or dermatitis, Plaintiff Rosenfeld, like similarly situated consumers, does not know with 100% certainty whether what seemed like skin irritation or dermatitis was in fact an allergic response to an ingredient in a personal care product.

15. Like similarly situated consumers, Plaintiff Rosenfeld does not know the identity of every ingredient he and his family is allergic to. Moreover, like similarly situated consumers, Plaintiff Rosenfeld does not know which ingredients he or his family may develop an allergy to.

16. Had Plaintiff Rosenfeld known at the time that the Product was not hypoallergenic and was not suitable for sensitive skin as promised, he would not have purchased the Product, or would not have purchased it on the same terms or for the same price.

17. Had Plaintiff Rosenfeld known at the time that the Product contained skin sensitizers or allergens in sufficient quantities to cause skin irritation or corrosion or contact dermatitis in its intended users, he would not have purchased the Product, or would not have purchased it on the same terms or for the same price.

18. Plaintiff Rosenfeld purchased, purchased more of, or paid more for, the Product than he would have had he known the Product contained skin sensitizers or allergens in sufficient quantities to cause skin irritation or corrosion or contact dermatitis in its intended users.

19. Plaintiff believes his son's eczema was not alleviated and may have been prolonged by the use of the Product.

20. If Defendant reformulated the Product such that its hypoallergenic and sensitive skin representations were truthful, Plaintiff Rosenfeld would purchase the Product in the future. Plaintiff Rosenfeld remains interested in purchasing truly hypoallergenic and sensitive skin body wash products, and continues to seek them in the market. However, he cannot know for certain whether the false labeling of the Product has been or will be corrected.

21. The composition of the Product may change over time, but if Defendant continues to make the representations at issue here, then, when presented with false or misleading information while shopping, Plaintiff Rosenfeld will be unable to make informed decisions about whether to purchase the Product. Plaintiff Rosenfeld is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure the Product's labeling is accurate and no longer has the tendency or capacity to deceive or confuse reasonable consumers.

22. Plaintiff Felicia Novick is domiciled in California and has been domiciled in California during all relevant times to this Complaint. For approximately thirteen months, from December 2023 through January 2025, Plaintiff Novick purchased the Product from CVS, Target, and Walmart stores in Van Nuys and West Hills, California. Plaintiff Novick estimates she purchased the Product at least ten times, with the earliest purchase in or around December 2023 and the most recent purchase in January 2025.

23. In deciding to make these purchases, Plaintiff Novick saw, relied upon, and reasonably believed the label representation that the Product was "hypoallergenic" and designed for "sensitive skin." These representations were a significant reason for her purchases.

24. Plaintiff Novick has sensitive skin and has in the past suffered skin irritation, dermatitis, and eczema, including rashes on her ankles and feet.

25. In the case of common skin irritation or dermatitis, Plaintiff Novick, like similarly situated consumers, does not know with 100% certainty whether what seemed like skin irritation or dermatitis was in fact an allergic response to an ingredient in a personal care product.

26. Like similarly situated consumers, Plaintiff Novick does not know the identity of every ingredient she is allergic to. Moreover, like similarly situated consumers, Plaintiff Novick does not know which ingredients she may develop an allergy to.

27. Had Plaintiff Novick known at the time that the Product was not hypoallergenic or appropriate for sensitive skin as promised, she would not have purchased the Product, or would not have purchased it on the same terms or for the same price.

28. Had Plaintiff Novick known at the time that the Product contained skin sensitizers or allergens in sufficient quantities to cause skin irritation or corrosion or contact dermatitis in its

intended users, she would not have purchased the Product, or would not have purchased it on the same terms or for the same price.

29. Plaintiff Novick purchased, purchased more of, or paid more for, the Product than she would have had she known the Product contained skin sensitizers or allergens in sufficient quantities to cause skin irritation or corrosion or contact dermatitis in its intended users.

30. Plaintiff believes her skin irritation, dermatitis, and eczema was not alleviated and may have been prolonged by the use of the Product.

31. If Defendant reformulated the Product such that its hypoallergenic and sensitive skin representations were truthful, Plaintiff Novick would purchase the Product in the future. Plaintiff Novick remains interested in purchasing truly hypoallergenic and sensitive skin body wash products, and continues to seek them in the market. However, she cannot know for certain whether the false labeling of the Product has been or will be corrected.

32. The composition of the Product may change over time, but if Defendant continues to make the representations at issue here, then, when presented with false or misleading information while shopping, Plaintiff Novick will be unable to make informed decisions about whether to purchase the Product. Plaintiff Novick is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure the Product's labeling is accurate and no longer has the tendency or capacity to deceive or confuse reasonable consumers.

33. Defendant Unilever Unites States, Inc. is a Delaware corporation with its principal place of business in Englewood Cliffs, New Jersey. Defendant manufactures, advertises, distributes, and sells the Product under its in-house brand, Dove, both online at sites like www.walmart.com, www.amazon.com, www.target.com, and www.meijer.com, and at myriad brick-and-mortar retailers and supermarkets throughout the United States. The Product includes

the Dove logo and name, and the "hypoallergenic" and "sensitive skin" representations, and is sold in 12, 20, 22, 30.6, and 34 fl. oz. bottles. Defendant is responsible for the labeling of the Product and its formulation, as well as all marketing materials and language that accompanies the Product on sites where the Product is available for sale.

## JURISDICTION AND VENUE

34. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from Defendant.

35. This Court has personal jurisdiction over Defendant because Defendant is a corporation with its principal place of business and headquarters located at 800 Sylvan Ave., Englewood Cliffs, New Jersey 07632, within the District of New Jersey. Defendant regularly conducts business within this judicial district, maintains offices and operations within this district, and has sufficient minimum contacts with this district such that the exercise of jurisdiction over Defendant is proper. A substantial portion of the events giving rise to the claims alleged here occurred in New Jersey.

36. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant resides in this District, a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District, and Defendant engages in continuous and systematic business activities within this District.

## FACTUAL ALLEGATIONS

### A. The Hypoallergenic Product Market

37. According to the Centers for Disease Control and Prevention ("CDC"), 8.8 million children (12% of U.S. children) reported skin allergies in 2012. Skin allergies are even more prevalent among young children; CDC reports that 14.2% of children between the ages of 0 and 4 suffered a skin allergy in 2012.

38. These numbers are likely to underreport the prevalence of allergic contact dermatitis. Recent studies show that somewhere between 14-70% of children suffer from skin allergies, based on positive patch skin tests.

39. Skin allergies are similarly prevalent among adults.

40. A significant portion of the U.S. population has allergies that are triggered by skin care products. Allergic contact dermatitis is the fifth most prevalent skin disease in the U.S. Personal care products such as soaps, lotions, and fragrances frequently contain ingredients that may cause allergic contact dermatitis. The prevalence of dermatitis related to personal care products increased by almost 300% between 1996 and 2016.

41. Over the last decade, retail chains such as supermarkets have become the most prolific manufacturers, marketers, and distributors of so-called "natural," "clean," and "hypoallergenic" personal care products, accounting for just over 40% of world-wide revenue in 2019. However, the U.S. Food and Drug Administration ("FDA") has not defined or regulated the terms "natural," "clean," or "hypoallergenic," resulting in sellers freely advertising with these terms to imply safety and health benefits to unsuspecting consumers.

42. Given the increased prevalence of allergic contact dermatitis and other skin conditions, there is no question consumers increasingly seek the presence of such terms on product

labels when shopping for themselves and their children. Those who do not already suffer from skin allergies seek hypoallergenic products to avoid developing skin allergies. Those who do suffer from skin allergies, or have children who suffer from skin allergies, seek hypoallergenic products to avoid unknown and/or hidden allergens that will exacerbate or prolong their conditions.

43. Vulnerable consumers, such as parents of children with skin sensitivities and individuals with histories of allergic reactions, are thus subject to exploitation by manufacturers of these products. Consumers are willing to pay more for products labeled "hypoallergenic" and suitable for "sensitive skin." In reality, so-called "hypoallergenic" and "sensitive skin" products may contain the same potential allergens as their standard counterparts, or may simply have replaced common allergens with less-studied ingredients that pose their own risks.

44. When skin is exposed to a sufficient amount of a chemical allergen, the skin is "sensitized." Upon re-exposure to the allergen, the skin initiates an inflammatory cascade, causing skin changes associated with allergic contact dermatitis. These include redness, oedema (fluid retention), scaling, fissures (cracking), vesicles (fluid-filled sacs), bullae (bubble-like cavity), and eventually oozing.

45. Contact sensitization and related skin allergies can severely affect a person's quality of life, depending on the severity and the site of skin sensitization. People suffering from noticeable skin allergies will try to hide the symptoms under clothing if possible, and if not, will avoid public spaces entirely. In either case, the skin allergies can dramatically affect a person's confidence and engagement in life.

46. It is difficult to identify the substance causing an allergic response. Allergic contact dermatitis develops several days after exposure to a skin allergen. Some substances do not cause symptoms until a week after exposure.

47. Once an individual is sensitized to an allergen, future contact with the allergen can trigger a response in the original site of sensitization. For example, if someone had an allergic response to a product used on the face, and later used a different product containing the same allergen on the legs, the allergic response could occur on the face, even if the face was never exposed to the second product.

48. When a consumer cannot identify the material to which they are allergic, allergic contact dermatitis will persist, and, it is believed, will take longer to resolve even after the cause is identified.

49. Thus, consumers actively seek out hypoallergenic and purported sensitive skin products—to avoid a skin allergy from occurring at all and/or to prevent a known skin allergy from repeating the inflammatory cascade.

**B. Defendant's Marketing Claims**

50. Defendant bases the Product's marketing scheme on appealing to consumers seeking hypoallergenic and sensitive skin products. The Products' various front labels prominently represent to consumers that the Product is purportedly "Hypoallergenic" and intended to be used on "Sensitive Skin":






51. On its website and the website of other retailers that sell the Product, Defendant advertises the Product as "Hypoallergenic" and suitable for "sensitive skin" and makes a variety of claims regarding how gentle the Product is for consumers' skin.[1] For example, on Amazon, in addition to the "hypoallergenic" and "sensitive skin" statements, Defendant makes the following claims about the Product: Paraben-Free; Sulfate-Free; "gentle"; "made with plant-based moisturizers"; "microbiome gentle"; "made with 100% gentle cleansers, Dove body wash is gentle

[1] https://www.dove.com/us/en/p/sensitive-body-wash.html/00011111122246

to your skin's microbiome and regenerates moisture"; "Dove body wash is ultra mild. It is made with 100% gentle cleansers and is the #1 dermatologist recommended body wash."[2]

52. On Kroger's, Target's, and CVS' websites for the Product, in addition to the "hypoallergenic" and "sensitive skin" statements, Defendant claims: "Having sensitive skin can be really…irritating. Making you wary of harsh ingredients that could trigger it. We get it! Our rich and creamy, hypoallergenic Dove Sensitive Skin Body Wash is here to wash away those concerns and leave you with soft, healthy-looking, and happy skin. The only reaction you can expect is a radiant, glowing review from your skin. . . . It's a body wash that's everything you need without the things you don't. Like no sulfates and no parabens. Only green flags here to make sure your sensitive skin won't be seeing red. . . . HYPOALLERGENIC: Dove Sensitive Skin Body Wash has a hypoallergenic formula that hypes up hydration and soothes dryness without irritation."[3]

53. Because even a *minute* amount of a chemical allergen is enough to cause a full-blown allergic response, Defendant knows that consumers rely upon it to not only test the final product formulation for basic safety, but to select only those ingredients that are known to be safe, and to avoid ingredients that are known, common allergens.

54. On its website, Defendant stresses not only product safety, but *ingredient* safety. As Defendant explains:

---

[2] https://www.amazon.com/Dove-Hypoallergenic-Paraben-Free-Sulfate-Free-Cruelty-Free/dp/B0BVBYQGTW?source=ps-sl-shoppingads-lpcontext&ref_=fplfs&smid=ATVPDKIKX0DER&gPromoCode=sns_us_en_5_2023Q4&gQT=0&th=1

[3] https://www.kroger.com/p/dove-body-wash-sensitive-skin-20-oz/0001111112224?fulfillment=PICKUP&storecode=02400339&&cid=shp_adw_shopl_.FY25.01_search_ent_awar.all_allent.lia_corelia_kroger.t1_g_lia_shop_all_na_verylowperformers_rank2_rev_roas_sf_ma%23%23%23%23%23%23%23%23%23&gad_source=1&gclid=CjwKCAiA5eC9BhAuEiwA3CKwQhqApe7SP2kbg-hXZ9FtBqDQB8256OrMxnjW9rZuo8g0HkENv_25VxoCycsQAvD_BwE&gclsrc=aw.ds; https://www.cvs.com/shop/dove-sensitive-skin-body-wash-prodid-978213; https://www.target.com/p/dove-sensitive-skin-hypoallergenic-body-wash-20-fl-oz/-/A-11695275

> For us, choosing the right ingredients takes time. We only pick ingredients that do a job like no other and that we have individually assessed to be safe. We find natural ingredients that offer the levels of care for skin and hair which you expect from a Dove product. If we can't source the quantities we need in a sustainable, ethically sourced way (or if the natural sources contain too many impurities, along with the good stuff) we can use nature-identical versions synthesized in laboratories for maximum purity and safety. We're always looking to the future. By combining these approaches in sourcing Dove ingredients, we can offer you the care your skin and hair loves.[4]

55. Regarding fragrance allergens specifically, Defendant writes on its website (though not on the Products' labels):

> Transparency in fragrance allergens[;] We recognize that a selection of ingredients used in fragrances have the potential to cause skin allergies in some individuals, we therefore disclose fragrance ingredients on our labels for transparency and to help you make informed choices. We also offer ranges of lightly scented or fragrance-free products for people who prefer unscented or fragrance-free products.
>
> We use only the highest-quality fragrance ingredients that meet global standards set by the International Fragrance Association (IFRA). We also have our own set of fragrance standards, which are stricter than the industry global standards. On top of this, we only use a very small amount of each fragrance ingredient – you might not think it, but the fragrance in total typically makes up 1.5% or much less of the overall product formulation. Plus, each fragrance is a mixture of literally dozens of ingredients, so the amount of any one ingredient in any product is very small.[5]

### C. Definition of Hypoallergenic.

56. The scientific and regulatory definition of a skin sensitizer is a substance that causes sensitization by skin contact in a substantial number of persons based on human evidence or appropriate animal testing.

57. If a skin sensitizer makes up 0.1% or more of a product, or if the product contains a sensitizer that may elicit an allergic response at concentrations smaller than 0.1% in individuals who are already sensitized to the chemical, the *entire* product mixture is classified as a skin

[4] https://www.dove.com/us/en/stories/about-dove/ingredients-we-use.html
[5] https://www.dove.com/us/en/stories/about-dove/ingredient-transparency.html#:~:text=We%252520recognize%252520that%252520a%252520selection,help%252520you%252520make%252520informed%252520choices.

sensitizer. In other words, such a product causes sensitization by skin contact in a substantial number of persons based on human evidence or appropriate animal testing.

58. A product that is a skin sensitizer is not hypoallergenic and is not suitable for sensitive skin.

59. Consumers believe and expect that a product that is labeled hypoallergenic and intended for sensitive skin does not contain skin sensitizers at a concentration that could elicit an allergic response in sensitized individuals.

60. Once skin is sensitized, even a *minute* amount of the chemical allergen is enough to cause a full-blown allergic response. Thus, consumers seeking *hypoallergenic* products or products marketed as suitable for "sensitive skin" expect that the product does not contain *any* skin sensitizers.

61. The terms "hypoallergenic" and "sensitive skin" on the Product's label communicate to reasonable consumers that the Product: (a) is not a skin sensitizer itself; (b) will not cause skin irritation or corrosion or contact dermatitis when used as directed by its intended users; (c) does not contain a significant amount of ingredients known to cause skin irritation or corrosion or contact dermatitis in its intended users; and (d) does not contain skin sensitizer ingredients in an amount that can reasonably be expected to induce an allergic response in a significant number of its intended users or in sensitized individuals.

62. The terms "hypoallergenic" and "sensitive skin" on the Product's label also communicate to reasonable consumers that the Product is less likely to cause an allergic reaction in its intended users than similar, competing products which do not claim to be hypoallergenic.

**D. Product Ingredients Contradicting "Hypoallergenic" and "Sensitive Skin" Claims**

63. Defendant's Product contains substances classified by reputable authorities as skin sensitizers.

64. One example of skin sensitizer ingredients in the Product are fragrance chemicals. Fragrance is one of the most common allergens and skin irritants, and a leading cause of allergic contact dermatitis according to the American Academy of Dermatology ("AAD"). Indeed, the AAD estimates about 2.5 *million* Americans have fragrance allergies.

65. The Product contains fragrance in an amount that can be reasonably expected to induce an allergic response in a significant number of people, and especially so in the intended customer base.

66. The risk of contact dermatitis from fragrance chemicals increases for those with compromised skin barriers. For individuals with sensitive skin or conditions like eczema, rosacea, or psoriasis, the use of fragranced products can be particularly problematic, exacerbating these conditions over time.

67. Even when there is no visible redness or rashes after using a product with fragrance chemicals, there may be inflammation at the cellular level and long-term consequences if use is prolonged. With repeated exposure over time, even individuals who initially tolerate fragranced products may develop allergies or sensitivities, sometimes leading to chronic skin issues.

68. The role of fragrance in skin care products is limited to aesthetic appeal and masking the natural scent of active ingredients. In other words, fragrance chemicals serve no essential purpose and do not contribute to the efficacy of skin care products in treating or alleviating skin issues.

69. For example, Defendant's Product contains the fragrance chemical Tetramethyl Acetyloctahydronaphthalenes in an amount that can be reasonably expected to induce an allergic response in a significant number of people.[6] Often marketed as Iso E Super, Timbersilk, and similar names, Tetramethyl acetyloctahydronaphthalenes are considered known skin sensitizers and allergens, and are categorized as such.

70. Consumer reviews confirm consumers' surprise and disappointment that the Product Defendant markets as "hypoallergenic" and suitable for "sensitive skin" would have such a high concentration of fragrance chemicals, and would so routinely cause allergic reactions:

TRae

**FULL of fragrance. NOT hypoallergenic**

Reviewed in the United States on April 23, 2023

Scent: Fragranced | Size: 30.6 Fl Oz (Pack of 3)

This product is laden with perfume and not fragrance-free. Please don't call it hypoallergenic unless it is free of toxic perfumes. So disappointed, Dove.

11 people found this helpful

Helpful | Report

ReticentRobot

**Not Fragrance-Free (Don't let the product description fool you)**

Reviewed in the United States on April 4, 2022

Scent: Unscented | Size: 30.6 Fl Oz (Pack of 1)

From product description on Amazon: "...Like the Dove Sensitive Skin Body Wash, a fragrance-free, hypoallergenic body was..."

However, this product is 100% NOT fragrance-free.

One person found this helpful

Helpful | Report

Andy

**NOT hypoallergenic**

Reviewed in the United States on May 10, 2022

Scent: Unscented | Size: 30.6 Fl Oz (Pack of 1) | Verified Purchase

The very first day I used it, I broke out in hives ALL over my body. My body got swollen and itchy all over. I thought it was because I was playing with a dog (I'm super allergic and break out when I touch dogs). It's been over a week and I'm still recovering from it but now today I broke out again on my arm again. I kept using the body wash because I didn't put two and two together but I just realized the day I broke out was the first day I used this soap. This is ridiculous. Definitely not good for sensitive skin— at all.



[6] https://smartlabel.unileverusa.com/011111396494-0001-en-US/index.html

Vanessa Clark

★☆☆☆☆ **NOT SENSITIVE SKIN FRIENDLY - HAS FRAGRANCE**

Reviewed in the United States on April 22, 2023

Scent: Unscented | Size: 30.6 Fl Oz (Pack of 1)

This product is so misleading. It clearly states that it is hypoallergenic and for sensitive skin, which would have one assume that it wouldn't have fragrance in it, when in fact, it does. And we're not even talking about a barely noticeable fragrance, it's a pretty strong fragrance, and if you have dermatitis or eczema, chances are your skin will burn and itch like mine did from only using it once. It doesn't make sense that their sensitive skin soap bar (which is lovely) has no fragrance, but the sensitive body wash does. They need to either keep it consistent, or make it clearer that this does have fragrance, and maybe even go as far as to not even call it a sensitive skin product. It's just not what it's advertised as, stay away!

Helpful | Report

GCNYC

★☆☆☆☆ **SCENTED AND NOT HYPOALLERGENIC**

Reviewed in the United States on November 16, 2021

Scent: Unscented | Size: 30.6 Fl Oz (Pack of 1)

Wow. I generally use natural very low scent product without any added perfume but due to some skin issues I was told to buy only hypoallergenic non-scented items to calm my skin and dove was on the list. I bought this hypoallergenic formula. The minute I cracked open the bottle and put it on my legs I felt like I had fallen into an old lady's perfume drawer!. I am mediately grabbed the bottle and saw that perfume fragrance was one of the ingredients. This is not hypoallergenic and this is not scent-free and in fact it's got such an awful cheap scent, especially if you are used to natural and quality perfumes. Allergy inducing and scented.

Helpful | Report

Ricardo Patino

★☆☆☆☆ **It should not be scented**

Reviewed in the United States on November 22, 2021

Scent: Unscented | Size: 30.6 Fl Oz (Pack of 1)

I've had sensitive skin all my life. The constant fear of using something on my skin that will cause a breakout, and the doctor visits and weeks or months of medication to clear up my skin.

Having said that, I am always extremely careful when using a self-care product, this includes nothing scented and now I am bothered by fragrances because I am not used to them. So it baffles me why Dove decided to scent this hypoallergenic product, way to completely miss the mark on their core consumer needs. Needless to say I discontinued usage and discarded it.

Helpful | Report

Daniel C.

★☆☆☆☆ **Doubt it's actually hypoallergenic**

Reviewed in the United States on January 1, 2022

Scent: Unscented | Size: 20 Fl Oz (Pack of 2) | Verified Purchase

I bought this as its advertised as being more natural without scents, dyes, or other chemicals. I have not been one to ever have an issue with sensitivity to soaps but this made my chest break out like crazy. Would not recommend.

Helpful | Report

Mark babich

★☆☆☆☆ **why would a "hypoallergenic" sensitive skin product have a potent noxious scent**

Reviewed in the United States on August 16, 2020

Scent: Unscented | Size: 30.6 Fl Oz (Pack of 1) | Verified Purchase

what is wrong with manufacturers??? too many consumer surveys where they don't really understand the responses, or don't know how to poise the questions????

Janice

★★☆☆☆ **Gave me hives and has strong fragrance**

Reviewed in the United States on January 12, 2022

Scent: Unscented | Size: 20 Fl Oz (Pack of 2) | Verified Purchase

Bought because I prefer fragrance free products on my skin, and this soap had a chunky consistency, broke me out in hives and was strongly scented. I read the ingredients and one of them is fragrance. This product shouldn't be labeled as hypoallergenic if there's fragrance in it. This can cause allergic reactions to people with sensitive skin.

One person found this helpful

Helpful | Report

MadMags

★☆☆☆☆ **Strong Smell**

Reviewed in the United States on August 7, 2024

Scent: Unscented | Size: 30.6 Fl Oz (Pack of 1) | Verified Purchase

Don't know how Dove can call this hypoallergenic and say it's for sensitive skin when it is scented, and scented strongly. It's awful. The perfume makes me itch.

Helpful | Report

Josh

**It works as in cleanses you**

Reviewed in the United States on August 26, 2020

Scent: Unscented | Size: 30.6 Fl Oz (Pack of 1) | **Verified Purchase**

If you truly have sensitive skin like me than you appreciate it being Hypoallergenic. What my skin doesn't like as it is sensitive is the added Fragrance (parfum). Which irritates my "SENSITIVE" skin.

Heavy fragrant smell

3 people found this helpful

Helpful | Report

SJ

**Not for sensitive skin/hypoallergenic**

Reviewed in the United States on October 27, 2023

Scent: Unscented | Size: 30.6 Fl Oz (Pack of 1) | **Verified Purchase**

I've bought this product because it says sensitive skin and hypoallergenic. It made my skin break out and itch. I looked at the ingredients and sure enough it has fragrance in it. Fragrance is an ingredient that causes allergic reactions.

7 people found this helpful

Helpful | Report

David Z

**this is not hypoallergenic to your NOSE**

Reviewed in the United States on April 8, 2022

Scent: Unscented | Size: 30.6 Fl Oz (Pack of 1) | **Verified Purchase**

if i buy something that is hypoallergenic i expect it to be fragrance free, bc A) added chemicals producing a fragrance are added chemicals i may be sensitive to, and B) allergens are not limited to skin, duh.

anyway, I'm sensitive to smells and this stuff is to perfumey by far for me. FAIL

One person found this helpful

Helpful | Report

Anis

**Fragrance doesn't belong in hypoallergenic products**

Reviewed in the United States on April 16, 2021

Scent: Unscented | Size: 30.6 Fl Oz (Pack of 1) | **Verified Purchase**

I love Dove's Sensitive Beauty Bars so I decided to try the liquid version. It smells absolutely awful. I'm extremely dissatisfied with this product. Fragrance is a major trigger for skin conditions like dermatitis and rosacea. The scent clings to your skin even after you get out of the shower. It feels good but it also doesn't lather. I'm going to stick with the bar soap from now on.

Adam D.

**Has a notable scent**

Reviewed in the United States on March 2, 2021

Scent: Sensitive Skin | Size: 22 Fl Oz (Pack of 4) | **Verified Purchase**

I mistakenly thought the "Hypoallergenic and Sulfate Free Sensitive Skin" version would be free and clear, to include being unscented. It has a very noticeable scent. It doesn't mention anything on it regarding a scent.

71. The Product also contains an array of other compounds known to cause allergic responses on skin.

72. For example, the Product contains cocamidopropyl betaine in an amount that can be reasonably expected to induce an allergic response in a significant number of people. This chemical is a surfactant (soap). Besides water, it is one of the first three ingredients listed on the Product's back label:

**INGREDIENTS/INGRÉDIENTS :** WATER (EAU), SODIUM LAUROYL ISETHIONATE, SODIUM METHYL LAUROYL TAURATE, COCAMIDOPROPYL BETAINE, LAURIC ACID, SODIUM HYDROXYPROPYL STARCH PHOSPHATE, HYDROGENATED SOYBEAN OIL, GLYCINE SOJA (SOYBEAN) OIL, SODIUM CHLORIDE, GLYCERIN, STEARIC ACID, PALMITIC ACID, HYDROGENATED VEGETABLE GLYCERIDES, GLYCERYL STEARATE, HYDROXYSTEARIC ACID, SODIUM BENZOATE, GUAR HYDROXYPROPYLTRIMONIUM CHLORIDE, FRAGRANCE (PARFUM), CITRIC ACID, CAPRYLOYL GLYCINE, UNDECYLENOYL GLYCINE, SODIUM GLUCONATE.

73. Defendant's Safety Data Sheets disclose that cocamidopropyl betaine is present in the Product at concentrations of 1-10%, an amount more than sufficient to induce an allergic response in a significant number of people.

74. Cocamidopropyl betaine has been recognized as a Category 1 skin sensitizer by reputable authorities, based on positive animal and/or human testing demonstrating that repeated skin contact can be expected to cause allergic response in a substantial number of persons. In fact, cocamidopropyl betaine was named the Allergen of the Year in 2004 by the American Contact Dermatitis Society.

75. Cocamidopropyl betaine is also a skin irritant and causes Category 1 eye damage, *i.e.*, it causes serious damage to the eye tissue or serious physical decay of vision which is not fully reversible within 21 days of application. Based on human or animal evidence, it is suspected of damaging fertility or the unborn child. It is also very toxic to aquatic life.

76. The Product also contains citric acid in an amount that can be reasonably expected to induce an allergic response in a significant number of people. While citric acid is a common food ingredient, skin contact is known to cause allergic reactions in humans. It has been reported to cause Category 1B skin corrosion, meaning that it irreversibly damages the skin after short exposure; in animal tests, citric acid caused visible necrosis after less than 1 hour of exposure.

Corrosive reactions are typified by ulcers, bleeding, bloody scabs, and, by the end of observation at 14 days, by discoloration due to blanching of the skin, complete areas of alopecia, and scars. Citric acid also causes Category 1 eye damage, *i.e.*, it causes serious damage to the eye tissue of serious physical decay of vision which is not fully reversible within 21 days of application.

77. The Product also contains glycerin in an amount that can be reasonably expected to induce an allergic response in a significant number of people. Glycerin is known to cause eczema in humans. Based on its chemical structure and similarity to other known skin sensitizers, it is a suspected skin sensitizer. Glycerin is classified as a skin and eye irritant.

78. The Product also contains glyceryl stearate in an amount that can be reasonably expected to induce an allergic response in a significant number of people. Glyceryl stearate is a skin and eye irritant. In animal testing (rabbits), it caused erythema, edema, atonia, desquamation, and/or fissuring. It is also inherently toxic to aquatic life.

79. The Product also contains sodium benzoate. Testing classifies sodium benzoate as a Category 1 skin sensitizer, based on positive animal and/or human testing demonstrating that repeated skin contact can be expected to cause an allergic response in a substantial number of persons. Sodium benzoate is also a skin irritant and causes serious eye damage as a Category 2 eye irritant. Testing finds that sodium benzoate causes Category 1 eye damage, *i.e.*, it causes serious damage to the eye tissue or serious physical decay of vision which is not fully reversible within 21 days of applications.

80. Some of the Product's ingredients have not yet been sufficiently studied or analyzed for their skin sensitization potential.

81. To be clear, many of the Product's ingredients are permitted in body care products. But Defendant did not simply claim that the Product is lawful to manufacture and sell. Defendant

falsely and misleadingly claimed the Product and its ingredients are "hypoallergenic" and suitable for "sensitive skin" when they are not.

82. Accordingly, Defendant's inclusion of fragrance chemicals and other skin sensitizers in the Product as alleged herein directly contradicts the hypoallergenic and sensitive skin claims.

83. In fact, the Product is *more* likely to cause an allergic reaction in consumers with sensitive skin than Defendant's Dove brand Sensitive Skin Body Bar, for example, which contains neither fragrance chemicals nor a "hypoallergenic" representation on its label and packaging:




**E. Consumer Deception**

84. Defendant's conduct deceived and/or was likely to deceive the public.

85. Consumers were deceived into believing the Product was hypoallergenic and suitable for sensitive skin, as labeled.

86. These representations were false, as explained *supra*.

87. Consumers would not know the true nature of the Product by looking at the front labels of the Product. There is nothing on the front labels (like an asterisk) disclaiming or modifying the "hypoallergenic" and "sensitive skin" representations. The "hypoallergenic" and

"sensitive skin" representations are not ambiguous or vague to reasonable consumers such that they would reasonably think or be expected to investigate those representations further before purchasing the Products. Further, consumers are overall less likely to look at ingredient lists on personal care products than for food, which consumers believe to have a more immediate and direct impact on their health.

88. Even consumers that happened to flip the Products to discover the ingredient list would not know the true nature of the ingredients. Their discovery would require investigation beyond the point of purchase and knowledge of chemistry beyond that of the average reasonable consumer. Further, studies show that even those consumers that do look at ingredient lists for personal care products very frequently do not understand what those ingredients are or what their role is in the product.

89. Defendant made the above false, deceptive, and misleading misrepresentations and omissions on the package of the Product.

90. Defendant repeated the above false, deceptive, and misleading misrepresentations and omissions on its online product page for the Product, and product pages at other online retailers such as Amazon, Kroger, CVS, and Target.

91. The misrepresentations and omissions were uniform and have actually been communicated to Plaintiffs and to each member of the Class at every point of purchase and consumption.

92. Defendant deceptively and misleadingly conceals material facts about the Product, including:

a. the true nature of the Product's formulation and effect;

b. that the Product contains sensitizers, irritants, toxins, carcinogens, pollutants, and/or otherwise hazardous substances;

c. the concentration of the sensitizers, irritants, toxins, carcinogens, pollutants, and/or otherwise hazardous substances in the Product;

d. that the Product is not "hypoallergenic" or suitable for "sensitive skin";

e. that the Product is not what a reasonable consumer would consider to be "hypoallergenic" or suitable for "sensitive skin"; and

f. that the Product contains chemicals that a reasonable consumer would not expect in a product labeled as "hypoallergenic" or suitable for "sensitive skin."

93. Plaintiffs and the members of the Class are not at fault for failing to discover Defendant's wrongs earlier and had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice.

94. To this day, Defendant continues to conceal and suppress the fact that the Product is not "hypoallergenic" and is not suitable for "sensitive skin" as promised.

95. Defendant represents elsewhere in online marketing that the products are "safe," "gentle," "mild," etc. These representations further obscure the fact that the Product is not hypoallergenic and is not suitable for sensitive skin.

96. Defendant holds itself out to the public as a trusted expert in the area of hypoallergenic, safe, mild, and gentle personal care products.

97. Defendant knew what representations it made regarding the Product.

98. Defendant knew what ingredients were added to the Product.

99. Defendant also knew all the facts demonstrating that its Product contains sensitizers, irritants, and otherwise toxic ingredients, and that the Product was therefore falsely labeled.

100. As Defendant knows, consumers, especially those with sensitive skin, prefer hypoallergenic products. As Defendant knows, consumers will pay a premium for hypoallergenic products and putative "sensitive skin" products or would not purchase these products at all unless they were truly hypoallergenic or suitable for sensitive skin, as advertised.

101. Defendant made the false, deceptive, and misleading representations and omissions, intending Plaintiffs and Class members to rely upon these representations and omissions in purchasing and using one the Product.

102. In making the false, misleading, and deceptive representations and omissions at issue, Defendant knew and intended that consumers would purchase the Product when consumers would otherwise purchase a competing product.

103. In making the false, misleading, and deceptive representations and omissions at issue, Defendant also knew and intended that consumers would pay a premium for hypoallergenic and sensitive skin products, furthering Defendant's private interest of increasing sales of its products and decreasing the sales of products marketed by its competitors.

104. With respect to the Product, Defendant knew that one of the most important, material label representations to consumers are the statements that the Product is "hypoallergenic" and suitable for "sensitive skin." Defendant made these prominent statements with knowledge that they are false and/or misleading to reasonable consumers. By deceiving consumers about the nature, quality, and/or ingredients of its Product, Defendant is able to take away market share from competing products and command a price premium, thereby increasing its own sales and profits.

105. For example, Kroger manufactures and sells a copycat product—Kroger brand "sensitive skin" body wash—which on its label states "Compare to Dove Sensitive Skin Hypoallergenic Body Wash." Despite selling an identical product, Kroger chooses not to deceive consumers by claiming the product is hypoallergenic anywhere on the front label:[7]




[7] The Kroger brand label may itself be misleading because, like Defendant's Product, it too is not suitable for "sensitive skin."

106. Defendant deceptively and misleadingly conceals other material facts about the Product, including: (a) the true nature of the Product's ingredients; (b) that the Product contains chemicals commonly known to be allergens, sensitizers, and/or irritants; (c) that the Product is not "hypoallergenic," not suitable for "sensitive skin," and not what reasonable consumers would consider "hypoallergenic" or suitable for "sensitive skin"; and (d) that the Product contains chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic."

107. To this day Defendant continues to conceal and suppress the existence, identity, nature, and concentration of fragrance chemicals and other skin sensitizers in the Product.

108. Similarly, to this day, Defendant continues to conceal and suppress the fact that the Product is not "hypoallergenic" and not suitable for "sensitive skin" as promised.

109. When Plaintiffs and the Class members purchased the Product, Plaintiffs and the Class Members saw the false, misleading, and deceptive representations detailed above, and did not receive disclosure of the facts concealed, as detailed above.

110. These misrepresentations were uniform and were communicated to Plaintiffs and Class Members at every point of purchase and consumption.

111. Notably, the "hypoallergenic" and "sensitive skin" statements are not disclaimed or modified anywhere on the Product's labels. No asterisk or marking appears by the words "hypoallergenic" or "sensitive skin" that would suggest to a reasonable consumer that they need to look elsewhere on the label to understand the true meaning. Because the "hypoallergenic" and "sensitive skin" statements appear effectively as one of the main claims on the front of the label of the Product, reasonable consumers interpret them at face value.

112. Plaintiffs and the Class Members were among the intended recipients of Defendant's deceptive representations and omissions.

113. Plaintiffs and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

114. Defendant's false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiffs, the Class Members, reasonable consumers, and the general public.

115. Defendant's misleading affirmative statements further obscured what it failed to disclose. Thus, reliance upon Defendant's misleading and deceptive representations and omissions may be presumed.

116. Defendant made the deceptive representations and omissions with the intent to induce Plaintiffs and the Class Members to purchase the Product. Plaintiffs' and the Class Members' reliance upon such representations and omissions may be presumed.

117. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Thus, Plaintiffs' and the Class Members' reliance upon such representations and omissions may be presumed as a matter of law. The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiffs and the Class Members.

118. Defendant knew or should have known that reasonable consumers would consider the representations material in deciding to purchase the Product.

119. Defendant knew or should have known that the representations could plausibly deceive reasonable consumers into believing that the Product is hypoallergenic and suitable for sensitive skin and contains no known, common allergens.

120. Reasonable consumers ascribe a common meaning to words on product labels.

121. Reasonable consumers rely on product labels for their truth and accuracy.

122. Reasonable consumers are not required to conduct independent research to determine the truth of label statements.

123. Reasonable consumers are not expected to look beyond misleading representations on the front label of a product or in marketing materials to determine whether they are false.

124. Instead, it is the responsibility of product manufacturers to accurately label their products in a manner that is not misleading.

125. Even a perfectly true statement that is couched in a manner that is likely to mislead or deceive consumers is actionable.

126. Plaintiffs and reasonable consumers reasonably believed that the prominent front label statements that the Product is hypoallergenic and suitable for sensitive skin were true.

127. As described herein, Defendant's front label statements are false.

128. Accordingly, there is no "common sense" interpretation of the representations that would overcome their falsity.

**F. Injuries and Damages**

129. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiffs and the Class Members in that they:

a. paid a sum of money for a product that was not as represented;

b. paid a premium price for a product that was not as represented;

c. were deprived the benefit of the bargain because the Product they purchased was different from what Defendant warranted;

d. were deprived the benefit of the bargain because the Product they purchased had less value than what was represented;

e. did not receive a product that measured up to their expectations as created by Defendant;

f. used (or caused their children to use) a substance that Plaintiffs and the Class Members did not expect or consent to;

g. used (or caused their children to use) a product that was not hypoallergenic or suitable for sensitive skin;

h. without their knowing consent, used (or caused their children to use) a substance that is likely to cause an allergic reaction and is generally harmful to their health or their children's health; and

i. without their knowing consent, used (or caused their children to use) a substance that is a skin sensitizer, irritant, or a known or suspected toxin, carcinogen, mutagen, teratogen, environmental pollutant, or otherwise is harmful to the environment and/or their health.

130. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class Members would not have been injured as listed above.

131. Accordingly, Plaintiffs and the Class Members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

132. As the intended, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant has been unjustly enriched through more sales of the Product and higher profits at the expense of Plaintiffs and the Class Members. As a direct and proximate result of its deception, Defendant also unfairly obtained other benefits, including

the higher value associated with a "hypoallergenic" and "sensitive skin" brand and the resulting higher stock value, redirecting sales to it and away from its competitors, and increased sales of its other products.

## CLASS ACTION ALLEGATIONS

133. ***Class Definition*****:** Plaintiffs bring this action on behalf all people in the following classes and subclasses (collectively referred to as "Class Members"):

(a). Nationwide Class: all people in the United States who purchased the Product for personal or household use during the last four years.

(b). California Subclass: all people in California who purchased the Product for personal or household use during the last four years.

(c). New York Subclass: all people in New York who purchased the Product for personal or household use during the last four years.

(d). New Jersey Subclass: all people in New Jersey who purchased the Product for personal or household use during the last four years.

(e). Multi-State Warranty Class: all people who purchased the Product for personal or household use (1) in Alaska, Arkansas, California, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, or Wyoming within the applicable statute of limitations; or (2) in Colorado or Massachusetts within the applicable statute of limitations.

(f). Multi-State Consumer Protection Class: all people who purchased the Product for personal or household use (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state of Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; or (4) in the states of Illinois and New York within the applicable statute of limitations.

134. Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

135. Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

136. ***Numerosity***. Class Members are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiffs at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant, its agents, or other means.

137. ***Commonality and Predominance.*** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

a. Whether Defendant misrepresented and/or failed to disclose material facts concerning the Product;

b. Whether the omissions and representations on the Product's label and the Product's marketing materials, or any single omission or representation, is false, misleading, and/or deceptive;

c. Whether Defendant's conduct in advertising and selling the Product amounted to unlawful, unfair, and/or deceptive business practices;

d. Whether Defendant breached an express and/or implied warranty created through the labeling and marketing of its Product;

e. Whether Plaintiffs and the Class Members are entitled to equitable and/or injunctive relief;

f. Whether Plaintiffs and the Class Members have sustained damage as a result of Defendant's unlawful conduct;

g. The proper measure of damages sustained by Plaintiffs and the Class Members; and

h. Whether Defendant was unjustly enriched by their unlawful practices.

138. With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the New York General Business Law § 349 and § 350.

139. ***Typicality***. The claims of the Plaintiffs are typical of the claims of the Class Members in that Plaintiffs and the Class Members sustained damages as a result of Defendant's uniform wrongful conduct, as alleged above.

140. ***Adequacy***. Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intends to vigorously prosecute this action on behalf of the classes. Plaintiffs have no interests that are antagonistic to those of the Class Members. Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed Class Members.

141. ***Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for Class Members; the Class Members are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

142. Defendant has acted or failed to act on grounds generally applicable to the Class Members, thereby making appropriate final injunctive relief with respect to the Class Members as a whole.

143. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiffs and Class Members and will likely retain the benefits of its wrongdoing.

**COUNT I**
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

144. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

145. Plaintiff Novick brings this cause of action individually and on behalf of all other class members in the Multi-State Consumer Protection Class and the California Subclass.

146. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

147. Defendant acted with knowledge and intent.

148. Plaintiff alleges a claim under all three prongs of the UCL.

149. As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

150. Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

151. Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

152. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the other members of the Multi-State Consumer Protection Class and the California Subclass have suffered and will continue to suffer out-of-pocket losses.

153. Plaintiff and class members in the Multi-State Consumer Protection Class and the California Subclass have suffered an injury in fact resulting in the loss of money and/or property

as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and class members in the Multi-State Consumer Protection Class and the California Subclass are inadequate because they are not equally prompt, certain, or efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

154. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product are determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff and members of the Multi-State Consumer Protection Class and the California Subclass would be left without the parity in purchasing power to which they are entitled.

155. Plaintiff seeks all relief available under the UCL.

**COUNT II**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code. §§ 17500, et seq.**

156. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

157. Plaintiff Novick brings this cause of action individually and on behalf of all other class members in the Multi-State Consumer Protection Class and the California Subclass.

158. Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 by engaging in the conduct alleged above.

159. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

160. Defendant knew or should have known that its conduct was false and/or misleading.

161. Defendant knew or should have known that its conduct was false and/or misleading.

162. Plaintiff lacks an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

163. Plaintiff and members in the Multi-State Consumer Protection Class and the California Subclass have suffered harm as a result of Defendant's violations of the FAL.

164. Plaintiff seeks all available relief under the FAL.

**COUNT III**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***

165. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

166. Plaintiff Novick brings this cause of action individually and on behalf of all other class members in the Multi-State Consumer Protection Class and the California Subclass.

167. Defendant is a "person" as defined by California Civil Code § 1761(c).

168. Plaintiff and the other members in the Multi-State Consumer Protection Class and the California Subclass are "consumers" within the meaning of California Civil Code § 1761(d).

169. For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

170. On March 21, 2025, Plaintiff provided pre-suit notice of the claims asserted under the CLRA via certified mail, return receipt requested, in compliance with all of the CLRA's requirements.

171. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

172. Defendant acted with knowledge and intent.

173. As alleged above, Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

174. With respect to the CLRA claim, Plaintiff alleges in the alternative that she lacks an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

175. As a result of Defendant's misconduct, Plaintiff and members of the Multi-State Consumer Protection Class and the California Subclass have suffered monetary harm.

176. Plaintiff seeks all relief available under this cause of action, including damages.

**COUNT IV**
**Violations of New York General Business Law § 349**

177. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

178. Plaintiff Rosenfeld brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class and the New York Subclass.

179. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

180. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

181. Plaintiff and members of the Multi-State Consumer Protection Class and the New York Subclass are consumers who purchased the Product from Defendant for their personal use.

182. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices. Defendant intentionally concealed and omitted material facts regarding the true nature of the Product.

183. The foregoing deceptive acts and practices were directed at consumers.

184. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Product to induce consumers to purchase the same.

185. By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

186. Defendant's actions are the direct, foreseeable, and proximate cause of the damages Plaintiff and members of the Multi-State Consumer Protection Class and the New York Subclass have sustained from having paid for and used Defendant's Product.

187. As a result of Defendant's violations, Plaintiff and members of the Multi-State Consumer Protection Class and the New York Subclass have suffered damages and an injury in fact.

188. On behalf of himself and other members of the Multi-State Consumer Protection Class and the New York Subclass, Plaintiff seeks to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorney fees.

**COUNT V**
**Violations of New York General Business Law § 350**

189. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

190. Plaintiff Rosenfeld brings this cause of action individually and on behalf all other class members in the Multi-State Consumer Protection Class and the New York Subclass.

191. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

192. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

193. Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of New York's General Business Law § 350.

194. Defendant's false, misleading, and deceptive statements and representations of fact were and are directed toward consumers.

195. Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

196. Defendant's false, misleading, and deceptive statements and representations of fact and omissions have resulted in consumer injury or harm to the public interest.

197. As a result of Defendant's false, misleading, and deceptive statements and representations of fact, and omissions, Plaintiff and the members of the Multi-State Consumer Protection Class and the New York Subclass have suffered and continue to suffer economic injury.

198. On behalf of himself and other members of the Multi-State Consumer Protection Class and the New York Subclass, Plaintiff seeks to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorney fees.

**COUNT VI**
**Violations of New Jersey Consumer Fraud Act ("NJCFA")**
**N.J. Stat. §§ 56:8-1, *et seq.***

199. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

199. Plaintiff Rosenfeld brings this cause of action on behalf of the Nationwide Class, the Multi-State Consumer Protection Class, and the New Jersey Subclass against Defendant.

200. The NJCFA prohibits any "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." *See* N.J. Stat. § 56:8-2.

201. At all relevant times, Plaintiff, members of the classes, and Defendant were "persons" within the meaning of the NJCFA. *See* N.J. Stat. § 56:8-1(d).

202. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale of the Product as defined by N.J. Stat. § 56:8-1(c) in violation of N.J. Stat. § 56:8-2 as described in the allegations above.

203. Defendant's misrepresentations and omissions in the sale of the Product detailed above were acts or practices in the conduct of trade or commerce.

204. Defendant's misrepresentations and omissions in the sale of the Product detailed above impact the public interest.

205. Defendant's misrepresentations and omissions in the sale of the Product detailed above were unfair because they inequitably enriched Defendant at the expense of Plaintiff Rosenfeld and members of the classes.

206. Defendant's misrepresentations and omissions in the sale of the Product detailed above were unfair because they offended public policy and were so oppressive that Plaintiff Rosenfeld and members of the classes had little alternative but to submit, which caused consumers substantial injury.

207. Defendant's misrepresentations and omissions in the sale of the Product were unfair in that they violated the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use by the products' intended users.

208. As alleged herein, Plaintiff Rosenfeld and members of the classes have suffered ascertainable loss as a direct and proximate result of Defendant's conduct.

209. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which it would not have received if it had not engaged in the violations described in this Complaint.

210. As a result, Plaintiff Rosenfeld and members of the classes seek relief including, *inter alia*, refund of amounts recovered by Defendant for the Product, injunctive relief, damages, treble damages, attorney's fees, and costs pursuant to N.J. Stat. §§ 56:8-2.11 and 56:8-19.

**COUNT VII**
**Breach of Implied Warranty**

200. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

201. Plaintiffs bring this cause of action individually and on behalf of the Nationwide Class, Multi-State Warranty Class, and the New Jersey, New York, and California Subclasses against Defendant.

202. Plaintiffs assert this cause of action under New Jersey law, or, in the alternative, under the laws of the states in which they made their purchases (New Jersey, New York, and California).

203. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Product, impliedly warranted that the Product was specially formulated to be "hypoallergenic" and suitable to be used by those with "sensitive skin," when that is not true.

204. Defendant breached its warranty implied in the contract for the sale of the Product because it could not pass without objection in the trade under the contract description, and because the Product could not be used for the specific purpose of being a body wash *suitable for sensitive skin*: the Product was not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiffs and members of the classes, and the Product does not

conform to the implied affirmations of fact made on the marketing and packaging for the Product. U.C.C. §§ 2-313(2)(a), (e), (f). As a result, Plaintiffs and members of the classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

205. Plaintiffs and members of the classes purchased the Product in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

206. The Product was defective when it left the exclusive control of Defendant.

207. Plaintiffs and members of the classes did not receive the goods as warranted.

208. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and members of the classes have been injured and harmed because: (a) they would not have purchased the Product on the same terms if they knew that the Product was not hypoallergenic; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

209. Plaintiffs seeks all available relief under this cause of action.

## COUNT VIII
## Breach of Express Warranty

210. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

211. Plaintiffs bring this cause of action individually and on behalf of the Nationwide Class, Multi-State Warranty Class, and the New Jersey, New York, and California Subclasses against Defendant.

212. Plaintiffs assert this cause of action under New Jersey law, or, in the alternative, under the laws of the states in which they made their purchases (New Jersey, New York, and California).

213. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, expressly warranted that the Product was "hypoallergenic" and suitable for "sensitive skin," when that is not true. The warranty was part of the description of the goods and the bargain upon which the goods were offered for sale.

214. By falsely representing that the Product was "hypoallergenic" and suitable for "sensitive skin," Defendant breached its express warranty.

215. Plaintiffs and members of the classes did not receive the goods as warranted.

216. As a direct and proximate cause of Defendant's breach of the express warranty, Plaintiffs and members of the classes have been injured and harmed because: (a) they would not have purchased the Product on the same terms if they knew that the Product was not hypoallergenic; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

217. Plaintiffs seek all available relief under this cause of action.

**COUNT IX**
**Unjust Enrichment**

218. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

219. Plaintiffs bring this cause of action individually and on behalf of all other Class Members (including all subclasses) against Defendant.

220. Plaintiffs assert this cause of action under New Jersey law, or, in the alternative, under the laws of the states in which they made their purchases (New Jersey, New York, and California).

221. To the extent required, Plaintiffs assert this cause of action in the alternative to legal claims, as permitted by Rule 8.

222. Plaintiffs and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

223. Defendant knew of the benefit conferred on it by Plaintiffs and the Class Members.

224. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Class Members' purchases of the Product, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Product was not hypoallergenic. This caused injuries to Plaintiffs and Class Members because they would not have purchased the Product or would have paid less for it if the true facts concerning the Product had been known.

225. Defendant accepted and retained the benefit in the amount of the gross revenues derived from sales of the Product to Plaintiffs and Class Members.

226. Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

227. Plaintiffs and Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Product.

228. As a direct and proximate result of Defendant's actions, Plaintiffs and the Class Members have suffered in an amount to be proven at trial.

229. Putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

230. Putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## COUNT X
**Fraud by Omission / Intentional Misrepresentation**

231. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

232. Plaintiffs bring this cause of action individually and on behalf of all other Class Members (including all subclasses) against Defendant.

233. Plaintiffs assert this cause of action under New Jersey law, or, in the alternative, under the laws of the states in which they made their purchases (New Jersey, New York, and California).

234. This claim is based on fraudulent misrepresentations and omissions concerning the qualities of the Product and the fact that it is not "hypoallergenic" or suitable for "sensitive skin" as alleged herein. As discussed above, Defendant failed to disclose and misrepresented *inter alia*: (a) the true nature of the Product's ingredients; (b) that the Product contains chemicals commonly known to be allergens, sensitizers, and/or irritants; (c) that the Product is not "hypoallergenic" or suitable for "sensitive skin" and is not what reasonable consumers would consider "hypoallergenic" or suitable for "sensitive skin"; and (d) that the Product contains chemicals that a reasonable consumer would not expect in a product labeled "hypoallergenic" or suitable for "sensitive skin."

235. The false and misleading omissions were made with knowledge of their falsehood. Defendant knew the true nature of the Product and its ingredients. Nonetheless, Defendant continued to sell the Product using the false and misleading omissions alleged herein to unsuspecting consumers.

236. The false and misleading omissions were made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, and were intended to induce and actually induced Plaintiffs and Class Members to purchase the Product.

237. The fraudulent actions of Defendant caused injury to Plaintiffs and Class Members, who are entitled to damages and punitive damages.

238. Plaintiffs seek all relief available under this cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. For an order certifying the classes and naming Plaintiffs as representatives;

b. For an order declaring Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs and the classes on all counts asserted herein;

d. For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiffs and the classes their reasonable attorney fees, expenses, and costs of suit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs request a jury trial on all issues so triable.

Dated: May 20, 2025

Respectfully submitted,

**SMITH KRIVOSHEY, PC**

*s/ Joel D. Smith*
Joel D. Smith (New Jersey Bar No. 457602024)
Aleksandr "Sasha" Litvinov (SBN 95598)
(*pro hac vice* forthcoming)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Telephone: 617-377-7404
E-Mail: joel@skclassactions.com
E-Mail: sasha@skclassactions.com

Yeremey O. Krivoshey (SBN 295032)
(*pro hac vice* forthcoming)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
E-Mail: yeremey@skclassactions.com

*Attorneys for Plaintiffs*
*and the Proposed Classes*

**CLRA Venue Declaration, Civil Code § 1780(c)**

I, Joel D. Smith, declare as follows:

1. I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify hereto.

2. I am the attorney for Plaintiff in the above-captioned action.

3. I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq*.

4. The Class Action Complaint has been filed in the proper place for trial of this action.

5. It is my understanding that Defendant is headquartered in and regularly transacts business in Bergen County, and the acts and omissions giving rise to this action occurred in large part in Bergen County.

6. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed on May 20, 2025 in Killingly, CT.

By: /s/ Joel D. Smith

Joel D. Smith